MERCED VELÁZQUEZ FIGUEROA, Plaintiff and Appellant, v. HEIRS OF JUAN B. BLANCO GUZMÁN, ETC., Defendants and Appellees.

No. 7047.   Argued June 5, 1936.—Decided July 6, 1936.

*Angel A. Vázquez* for appellant.   *Juan B. Soto* and *Juan F. Soto* for appellees.

MR. JUSTICE TRAVIESO delivered the opinion of the Court.

The plaintiff in this case, claiming to be the bearer and owner of two promissory notes for $5,000 each, issued by

Juan B. Blanco Guzmán, both maturing on December 7, 1930, filed a complaint on the 19th of the same month and year, against the defendants-appellees, to recover principal and interest at 12 per cent per annum, and prayed for a judgment for a total of $14,800. Both promissory notes were issued on December 7, 1926, and were payable to bearer.

Paragraph III of the complaint reads as follows:

"III.—On December 27, 1929, the debtor Juan B. Blanco Guzmán died, leaving as his sole and universal heirs his widow Teresa López Cepero and his legitimate children Jesús, Lucía, Juan, Aurora, Teresa, Pío, Galo and Carmen Blanco López."

The defendants demurred to the complaint for want of facts sufficient to constitute a cause of action. The demurrer was overruled.

The defendants answered denying absolutely that the plaintiff was the owner of the said promissory notes and that the defendants are the heirs of the deceased Juan B. Blanco Guzmán. As an additional defense they alleged that none of the defendants has accepted, either purely or simply, or under benefit of inventory, the estate of the deceased Blanco Guzmán; that although the said Blanco Guzmán made the promissory notes in controversy, he did not deliver them to any one, but kept them in his possession until the time of his death; that according to the information and belief of the defendants, after the death of Blanco Guzmán, the said promissory notes were taken from the place where the latter kept them; and that the plaintiff has acquired the said documents in a fraudulent manner, without cause (causa) or consideration, and without the consent of the maker.

The trial judge, in rendering judgment for the defendants, makes the following findings of fact:

"The plaintiff attempted to show how he had acquired these promissory notes, but his testimony is so improbable, so contradictory, and his manner of testifying so deficient, that we are absolutely sure that the plaintiff, in spite of the fact that he is the holder of the obligations, is not the owner.

"It is sufficient to read his testimony to become immediately aware of the improbability of the story he tells in relation to the manner in which he acquired these documents.

"It appears from the evidence that Juan B. Blanco lived in concubinage with a woman with whom his children had no relations whatever, and it was at the time of his death that he called his son Juan, who could not or d:d not take charge of the documents of his father which were in the custody or care of the concubine who accompanied him.

"We are convinced, as we have said before, that the plaintiff is not the owner of these promissory notes, and our conscience balks at judgment for the plaintiff in this case, in spite of the fact that the documents are in his possession."

It is from this judgment that the present appeal was taken.

Before considering the only question of law raised by the briefs of both parties, let us make a brief examination of the evidence taken, for the purpose of determining whether or not the conclusions of the lower court are justified by the evidence.

The plaintiff presented the two promissory notes, both of the same tenor, which are the object of the complaint. After they were admitted, the plaintiff stated that since the defendants had denied that the plaintiff was the bearer and owner of the promissory notes, the plaintiff would abstain from presenting evidence as to the other averments of the complaint, inasmuch as these had been admitted, some directly, others by virtue of negative pregnants and others by insufficient and evasive answers which involve admissions.

Upon denial of a motion for nonsuit made by the defendants, the latter offered the following testimony:

Juan B. Blanco López testified:

That his father Juan B. Blanco Guzmán had been living with a concubine for some years; that his father, upon becoming seriously ill, sent for the witness, who went to the concubine's house and that there, in a wooden box in a wardrobe in his father's room, he saw the two promissory notes; that

he saw them there about half an hour before his father died, since the latter had told him that the box contained several documents which the witness should keep and that for this reason the witness opened the box and saw there the two promissory notes; that he did not leave there until after the death of his father when he went to make arrangements for the funeral; that after the burial he took the little box containing the documents away with him and upon examining it again, some days later, he noticed that the promissory notes were missing; that the notes were taken out of the box after the death of his father, while the witness was making the arrangements for the funeral, which could easily have happened since his father died in the house of a woman who was not his wife but his concubine.

Merced Velázquez, the plaintiff, testified:

That he acquired the two promissory notes in November, 1930, from Gregorio Cubero, who gave them to him in payment of $5,300 which he owed him; that during 1926 and 1927 the witness had loaned Cubero $2,000 in cash, in several advances of $200 each, and that Cubero owed him the remainder for commissions on sales of urban parcels that the witness had made as the agent of Cubero; that he made the loan to Cubero because the latter, who was a contractor, was going to build him a house, but that he never built the house and therefore still owed him the money; that at that time, from 1926 to 1928, the witness had money in the banks; that he did not make an income tax return for the credit represented by the promissory notes; that shortly before lending the money to Cubero the witness had gone into business, which he left because he went bankrupt, and that after bankruptcy he loaned the money to Cubero; that Cubero did not give any receipt for the amounts delivered to him and that the witness never demanded any document to show that the loans had been made; that he has no books in which the dates of the said loans appear; that he never tried to collect from Cubero nor did he demand security for the sums

loaned to him, or for the sums that Cubero owed the witness for commissions; that the loans were always made in cash and never by checks; and that he does not remember whether on the dates on which the loans were made to Cubero the witness had funds in the banks.

Gregorio Cubero testified:

That he is a contractor; that he was the owner of the two promissory notes involved in this suit, and that he gave them to the plaintiff in payment of a debt of $5,300, of which $2,000 originated in several loans and the remainder in commissions; that he was going to direct a construction for the plaintiff but that afterward he could not do it and remained in debt to him; that the witness acquired the two promissory notes from Rafael Veve Carrillo in an exchange of farms made between them and that Veve acquired them from Juan B. Blanco Guzmán in a real estate deal; that he does not remember the dates on which the plaintiff made the loans to him; that he never gave receipts or security for the debts to the plaintiff; that the plaintiff did not demand payment from the witness, but that the latter gave him the two promissory notes in spite of the fact that they were for a sum more than twice the amount which he owed him and that he knew that the notes were soon to fall due.

The defendants having announced that they would waive the testimony of witness Rafael Veve Carrillo which they had offered, the plaintiff asked the court in rendering judgment to take into account the provisions of Subdivision 5 of Section 102 of the Law of Evidence, which establish the presumption that the evidence suppressed would have been adverse to defendants.

The following errors are assigned to the lower court:

1. In rendering judgment for defendants, based on scruples of conscience and not on the merits of the allegations and of the evidence, thus ignoring the rights of the plaintiff as the bearer and owner of the two promissory notes transferred in good faith, for value received, before maturity.

2. In rendering judgment for defendants without taking into consideration the voluntary waiver made by the defenants of the testimony of witness Rafael Veve Carrillo.

■■ The decision of the first error assigned offers no difficulty whatever. The paragraphs of the opinion of the lower court which we have copied clearly show that the judgment is not based on mere conscientious scruples of the trial judge, but on a careful weighing and appraisal of the testimony of the plaintiff himself in support of his right to collect the promissory notes. The judge who presided at the trial and before whom the plaintiff testified, had the opportunity, which this court can not have, of seeing the plaintiff in person, of observing his manner of testifying, of hearing and seeing the contradictions fall from his lips and of gradually forming in his conscience the conviction that the plaintiff did not have the right to the judgment which he requested. A judge, who after hearing the story which a plaintiff tells him, believes it improbable; who observes the attitude and the manner in which such plaintiff testifies and finds it deficient; and who notes the numerous and inexplicable contradictions made in his testimony, would indeed have to do violence to his conscience in order to render a judgment for such a plaintiff.

It is to the trial judge that the law grants the power to weigh the evidence and to judge the credibility of the witnesses. And the appellate court cannot and should not reverse a decision for supposed errors in the weighing of the evidence, unless it is alleged and shown, or unless it is evident from the record, that the judge acted with partiality, prejudice, or bias or that he committed manifest error. And in this case none of these grounds for reversal has been alleged.

■ The summary of the evidence which appears in the statement of the case does not give rise to the conviction that the lower court erred in weighing it. Rather does it bring out the improbability of the story the plaintiff tells to

maintain that he is not only the holder but also the owner of the promissory notes. It is difficult to believe that a man who has failed in business, should begin shortly afterwards to make loans to another person, for a period of two or three years, without obtaining receipts from the borrower for the amounts loaned; that these loans should be made to a person who already owes the lender a considerable sum for commissions on sales; and lastly, that the debtor of those loans and commissions, totalling $5,300, without pressure from his friend for payment, should have delivered to his creditor two mortgage notes for a total value of $14,800 at maturity, a few days before the due date of those obligations. We are not surprised that the conscience of the trial judge balked at believing the testimony of the plaintiff and of his alleged assignor Gregorio Cubero.

The case of *Cortés* v. *Heirs of Palén*, 39 P.R.R. 325, cited by the appellant, is not applicable here. In the case cited it was alleged as a defense that the promissory note was false or simulated. And this court, after a careful examination of the record, reached the conclusion that the evidence of simulation was not sufficient to destroy the presumption of truth borne by the document, the authenticity of which is beyond doubt. In the present case there is no issue as to the authenticity of the two notes. It has been admitted by the defendants that the deceased, Blanco Guzmán, signed the promissory notes. What has been specifically denied is that the said Blanco Guzmán delivered them or issued them to any one, it being alleged on the contrary that the promissory notes were in his possession up to the time of his death and that after his death the documents were fraudulently removed.

The plaintiff alleged that the defendants were the sole and universal heirs of the deceased, but this essential fact was specifically disputed by the defendants, who denied they were such heirs. Once this fundamental issue was raised, it was incumbent on the plaintiff to prove his allegation, in order to establish the existence of a cause of action against

the defendants. The record shows that the plaintiff limited himself to presenting the promissory notes and that he presented no evidence to establish the fact that the defendants were the heirs of Blanco Guzmán. This is an insufficiency in the evidence which the trial court must certainly have taken into account in rendering judgment for defendants and which would have justified the granting of the motion for nonsuit made by the defendants at the close of the plaintiff's evidence.

The various questions presented by the appellees are interesting and worthy of serious and careful study, but we do not believe it necessary to decide them since they are academic, inasmuch as the judgment was for the defendants and we have decided to affirm it.

The second error assigned by the appellant is entirely frivolous and as such must be dismissed.

The judgment appealed from must be affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.